UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re

       Mary L. Ward,

                Debtor.
------------------------------------------------------------x

Chapter 13

Case No. 09-47334-CEC

<u>DECISION</u>

Appearances:

Michael J. Macco
135 Pinelawn Road
Suite 120 South
Melville, NY 11747
Chapter 13 Trustee

Bruce Goldstein, Esq.
26 Court Street, Suite 908
Brooklyn, NY 11242
Attorney for 768 Dean Inc.

Mary L. Ward
320 Tompkins Avenue
Brooklyn, NY 11216
Chapter 13 Debtor, pro se

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion of 768 Dean Inc. (the "Purchaser") for relief from the automatic stay pursuant to § 362 of the Bankruptcy Code[1] to evict the Debtor and to obtain possession of the Debtor's residence, a house located at 320 Tompkins Avenue, Brooklyn, New York (the "Property").  Also before the Court is the motion of Michael J. Macco (the "Trustee"), the chapter 13 trustee, to dismiss this case.  Mary L. Ward (the "Debtor") opposes both motions.  For the following reasons, both motions are granted.

<u>Jurisdiction</u>

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G) and 1334 and the Eastern District of New York standing order of reference dated August 28, 1986.  This decision constitutes the Court's findings of fact and conclusion of law to the extent required by the Federal Rule of Bankruptcy Procedure 7052.

<u>Background</u>

The following facts are undisputed, or are matters of which this Court may take judicial notice.

On August 26, 2009, the pro se Debtor filed a voluntary petition under chapter 13 of the Bankruptcy Code.  Thereafter, on September 15, 2009, the Debtor filed Schedules A through I. On Schedule A, the Debtor stated that she owned the Property in fee simple, valuing it at $500,000, and that the Property was encumbered by a secured claim of $100,000 held by Bankers Trust of California.  On Schedule F, the Debtor listed approximately $1,700 in unsecured debt owed to Petro Oil Company and the New York City Department of Environmental Protection/New York City Water Board.  On Schedule I, the Debtor listed monthly income of

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, Title 11 U.S.C.

$3,240.  On October 2, 2009, the Debtor filed Schedule J, listing total monthly expenses of $2,173.

On September 15, 2009, the Debtor filed her chapter 13 plan, proposing to pay $30 per month for 60 months, of which 10% would be paid towards the Trustee's fees.  The plan also provides that the "first and second mortgages [will be] paid by Debtor outside [the] Plan," but that, through the plan, the Debtor will cure the default to Mortgage Lenders Network.  Unsecured creditors will receive nothing pursuant to the proposed chapter 13 plan.

On September 23, 2009, the Purchaser filed its motion seeking relief from the automatic stay to continue its efforts to evict the Debtor from the Property, as well as prospective relief in the event of any future filing of the Debtor, or in the alternative, in any bankruptcy case filed by the Debtor within 180 days.  (Mot. for Relief From Stay, docket entry # 15.)  The Purchaser asserts that Shameem Chowdhury[2] was the successful bidder at a foreclosure auction of the Property held on June 12, 2008, which was conducted pursuant to a judgment of foreclosure issued on February 22, 2008 (the "Foreclosure Judgment").  (Goldstein Affirmation in Supp., docket entry # 23, at Ex. A, Foreclosure Judgment, Referee's Report of Sale, Referee's Deed.)  The Purchaser further contends that it was assigned Mr. Chowdhury's winning bid, and that it closed on the Property on July 30, 2008.  (Chowdhury Aff., docket entry #15, ¶ 2; Goldstein Affirmation in Supp., docket entry # 23, at Ex. A, Referee's Report of Sale and Referee's Deed.)  Since that time, it has sought to obtain possession of the Property.

---

[2] Mr. Chowdhury filed an affidavit in support of the Purchaser's motion, stating that he is the "agent" of the Purchaser.  (Chowdhury Aff., docket entry #15, ¶ 1.)

A hearing on the Purchaser's motion was held on October 8, 2009, at the conclusion of which the Court requested that the Purchaser provide documentary evidence in support of its motion, and adjourned the hearing to November 3, 2009.  In accordance with the Court's direction, on October 22, 2009, the Purchaser filed copies of the Foreclosure Judgment, the Referee's Report of Sale dated July 30, 2009, and the Referee's Deed dated July 30, 2008 transferring the Property to the Purchaser.

On October 22, 2009, the Trustee filed his motion to dismiss this case because the Debtor did not appear at the initial § 341 meeting of creditors, did not submit monthly pre-confirmation plan payments, and did not provide copies of required tax returns, copies of filings required under § 521, and all disclosures required by E.D.N.Y. LBR 2003-1.  The Debtor did not file any opposition to the Trustee's motion.

A further hearing on the Purchaser's motion was held on November 3, 2009, and a hearing on both motions was held on November 24, 2009.

Discussion

I.  <u>Purchaser's Motion</u>

The Purchaser argues that it has owned the Property since July 30, 2008, and seeks relief from the automatic stay in order to evict the Debtor and obtain possession of the Property.  The Debtor argues that the Purchaser's motion should be denied because the Foreclosure Judgment, pursuant to which the foreclosure sale took place, was erroneous.  The Debtor argues that no original note was produced (Tr.[3] 11/3/09 at 5-6), that the mortgage was rescinded (Debtor's Opp'n, docket entry # 24, ¶ 3), that the plaintiff in the action doesn't exist or that it was not a

---

[3] "Tr." refers to the transcript of the hearing held on the date indicated.

proper party to the foreclosure action (Tr. 11/3/09 at 21), and that "everything was done irregularly and underneath [the] table" (Tr. 11/3/09 at 9).

The Rooker-Feldman doctrine prevents this Court from reviewing the validity of the Foreclosure Judgment. This doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The Rooker-Feldman doctrine "strip[s] federal subject matter jurisdiction over lawsuits that are, in substance, appeals from state court decisions." Book v. Mortgage Elec. Registration Sys., 608 F. Supp. 2d 277, 288 (D. Conn. 2009) (citing Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005)).

The Rooker-Feldman doctrine does not divest the federal court of jurisdiction of an "independent claim based on an injury not 'caused by' the state-court judgment, even if the claim denies a legal conclusion of the state court." Estate of Keys v. Union Planters Bank, N.A., 578 F. Supp. 2d 629, 637 (S.D.N.Y. 2008). "[T]he applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." McKithen v. Brown, 481 F.3d 89, 97-98 (2d Cir. 2007). "[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." Id. at 98.

For instance, it has been held that the <u>Rooker-Feldman</u> doctrine was inapplicable when a party who lost in a state court foreclosure action asserted claims of conversion and intentional infliction of emotional distress, because those claims alleged fraud in the procurement of the foreclosure judgment, and because the party did not seek to vacate the foreclosure judgment, but sought the remedy of money damages.  <u>Goddard v. Citibank, NA</u>, No. 04CV5317, 2006 WL 842925, at \*4 (E.D.N.Y. Mar. 27, 2006).  However, the <u>Rooker-Feldman</u> doctrine was held to apply when a party sought to set aside a transfer of a house pursuant to a judgment of foreclosure, even though the party argued that the judgment was procured by fraud.  <u>Keys</u>, 578 F. Supp. 2d at 637.

The <u>Rooker-Feldman</u> doctrine applies in this case because the Debtor lost in the state court foreclosure action, the Foreclosure Judgment was rendered before the Debtor commenced this case, and the Debtor seeks this Court's review of the Foreclosure Judgment in the context of her opposition to the Purchaser's motion for relief from the automatic stay.  The injury complained of, <u>i.e.</u>, the foreclosure sale to the Purchaser, was "caused by" the Foreclosure Judgment because "the foreclosure [sale] would not have occurred but-for" the Foreclosure Judgment.  <u>Id.</u> at 637.  Accordingly, the <u>Rooker-Feldman</u> doctrine does not permit this Court to disregard the Foreclosure Judgment.  <u>See</u> <u>Gray v. Americredit Fin. Servs., Inc.</u>, No. 07 Civ. 4039, 2009 WL 1787710, at \*4 (S.D.N.Y. June 23, 2009) ("Courts in this Circuit have consistently held that a plaintiff who lost possession of his home in a state court foreclosure proceeding is barred by the *Rooker-Feldman* doctrine from attacking the state court judgment in federal district court."); <u>Goddard</u>, 2006 WL 842925, at \*4 ("To the extent that Plaintiff asks that this court find

the Judgment of Foreclosure to be invalid because her mortgage payments were up to date . . . I find that this claim is barred by the *Rooker-Feldman* doctrine.").

Even if this Court had jurisdiction to review the validity of the Foreclosure Judgment, res judicata bars the Debtor's argument that the Foreclosure Judgment is erroneous on the bases that the plaintiff was not a proper party, the mortgage was rescinded, or that no original note was ever produced.  "Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction." Charell v. Gonzalez (In re Gonzalez), 241 B.R. 67, 72 (S.D.N.Y. 1999); see also Brown v. Felsen, 442 U.S. 127, 131 (1979); Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000). This doctrine "ensures the finality of decisions." Brown, 442 U.S. at 131.  To determine the preclusive effect of a state court decision, a federal court must apply the standard used by the state in which the decision was rendered.  28 U.S.C. § 1738; Exxon Mobil, 544 U.S. at 293; In re Fischer, 252 B.R. 603, 613 (Bankr. E.D.N.Y. 2000).  Under New York's doctrine of res judicata "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir. 2002).  "This doctrine also applies to defenses that could have been litigated, including defenses to a foreclosure." Yeiser v. GMAC Mortg. Corp., 535 F. Supp. 2d 413, 421 (S.D.N.Y. 2008).  Although this doctrine requires "an identicality, or privity, of the plaintiffs and defendants in the initial and subsequent actions," this requirement "is not strictly imposed where the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of res judicata would not alter this

conclusion."[4] Pharr v. Evergreen Garden, Inc., 123 Fed. Appx. 420, 424 (2d Cir. 2005). Therefore, because the Debtor was a party to the state court foreclosure action, and because she could have raised these defenses in that action, she is barred from asserting them at this juncture.

Some cases have held that, notwithstanding the doctrine of res judicata, a New York state court's judgment is not given preclusive effect by the federal court if the judgment was procured by collusion or fraud. See Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987), cert. denied, 484 U.S. 1007 (1988); Goddard, 2006 WL 842925, at *7; In re Slater, 200 B.R. 491, 495 (E.D.N.Y. 1996); County of Suffolk v. Long Island Lighting Co., 710 F. Supp. 1387, 1393 (E.D.N.Y. 1989). This is because New York law permits collateral attacks on judgments obtained by extrinsic, as opposed to intrinsic, fraud. Slater, 200 B.R. at 496 (citing Altman v. Altman, 542 N.Y.S.2d 7, 9 (App. Div. 1989)). Extrinsic fraud involves the parties' "opportunity to have a full and fair hearing," while intrinsic fraud, on the other hand, involves the "underlying issue in the original lawsuit." Id. Other cases have held that a judgment is still given preclusive effect even it was obtained by fraud. See Gray, 2009 WL 1787710, at *6; Alaimo v. Gen. Motors Corp., No. 07-CV-7624, 2008 WL 4695026, at *6 (S.D.N.Y. Oct. 20, 2008); Keys, 578 F. Supp. 2d at 635-636; Marshall v. Grant, 521 F. Supp. 2d 240, 246 (E.D.N.Y. 2007). However, these cases do not address the distinction between extrinsic and intrinsic fraud, and the fraudulent acts alleged in those cases appear to constitute intrinsic fraud.

---

[4] The requirement of privity may be satisfied because the Purchaser owns the Property as a successor in interest to the foreclosing mortgagee. Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277 (1970) (privity "includes those who are successors to a property interest"); see also Pharr, 123 Fed. Appx. at 424 (quoting Watts, 27 N.Y.2d at 277).

It has also been held that the Rooker-Feldman doctrine does not prevent the collateral attack on a state court judgment which is alleged to have been procured through fraud, if the claim now asserted is independent from the claim that the state court judgment was erroneous. See Marshall, 521 F. Supp. 2d at 245; Mac Pherson v. State St. Bank & Trust Co., 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006); Goddard, 2006 WL 842925, at *5-6.

No extrinsic fraud is alleged in the procurement of the Foreclosure Judgment, such as, for example, threats of physical harm, or the misrepresentation that the action would be discontinued.  Compare Slater, 200 B.R. at 496 ("[T]he [d]ebtor's allegations that her brother physically assaulted her and threatened her life before and during the trial . . . does constitute extrinsic fraud sufficient to attack the state court judgment."); Tamimi v. Tamimi, 328 N.Y.S.2d 477, 484 (App. Div. 1972) ("Upon the undisputed testimony in this case the [party] was 'robbed' of her opportunity to make her defense in the Thai court by reason of the [other party]'s fraud and misrepresentation that he would discontinue the action which he had instituted against her.").  No claim of defect in the state court action is asserted by the Debtor separate from the claim that the Foreclosure Judgment was erroneous because the mortgage was rescinded, no original note was produced, or that the plaintiff was not a proper party to the foreclosure action.  Cf. Goddard, 2006 WL 842925, at *4-6 (aside from the claim that a state court judgment was erroneously rendered, which was barred by the Rooker-Feldman doctrine, the party also asserted claims of conversion and intentional infliction of emotional distress, which were not barred by the Rooker-Feldman doctrine).  These allegations, even if true, do not constitute any conduct that prevented the Debtor from fairly and fully litigating the foreclosure action; rather, these arguments go to the merits of the foreclosure action, and are insufficient to permit collateral attack of the Foreclosure

Judgment.  See Gray, 2009 WL 1787710, at *6 n.2 ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from *res judicata*."); Slater, 200 B.R. at 496 (debtor's argument in bankruptcy court that her signature on a deed, which was the basis for a foreclosure judgment, was fraudulently obtained was insufficient to collaterally attack the foreclosure judgment because the argument alleged intrinsic fraud); Bell v. Town Bd. of Pawling, 537 N.Y.S.2d 214, 215 (App. Div. 1989) ("A challenger will not prevail by merely showing fraud in the underlying transaction but must show fraud in the very means by which the judgment was procured.").  The Debtor's broad and unsubstantiated allegation that "everything was done irregularly and underneath [the] table" (Tr. 11/3/09 at 9) is insufficient to establish that the Foreclosure Judgment was procured through extrinsic fraud.  Therefore, the Rooker-Feldman doctrine and res judicata bar this Court from reviewing the Foreclosure Judgment.

Notwithstanding the validity of the Foreclosure Judgment, the Debtor argues that the Purchaser's motion should be denied because the auction was improperly conducted.

The Debtor contends that the state court stayed the sale prior to it being conducted, thereby invalidating the sale.  (Debtor's letter dated 11/13/09, docket entry # 25.)  In support, the Debtor attached a copy of an order to show cause issued by the state court on June 11, 2008, the day before the scheduled sale.  (See Order to Show Cause attached to Debtor's letter dated 11/13/09, docket entry # 25.)  The Debtor further contends that the referee was not permitted to conduct the auction so long as she was still in litigation.  (Tr. 11/24/09 at 9.)

The Debtor's arguments that the sale was stayed, either by order or by operation of law, must be rejected.  Nothing in the order to show cause provides a stay of the sale.  Indeed, the

decretal paragraph that contained a stay was stricken by the state court.  (See Order to Show Cause attached to Debtor's letter dated 11/13/09, docket entry # 25 at 2.)  Moreover, the Debtor has provided no authority to support her argument that the foreclosure auction was stayed by virtue of her pending litigation.  The Court notes that, in certain circumstances, a stay pending appeal may be imposed without a court order by operation of New York Civil Practice Law and Rules § 5519.  See N.Y. C.P.L.R. § 5519(6).  However, the Debtor has not established that she appealed the Foreclosure Judgment, or that she took the steps necessary to invoke the application of that statute.  Therefore, the Debtor has not established that the auction was stayed.

New York law permits a court to set aside a foreclosure sale under certain circumstances. "[A] court of equity may set aside its own judicial sale upon grounds otherwise insufficient to confer an absolute legal right to a resale in order to relieve of oppressive or unfair conduct." Levitin v. Homburger, 932 F. Supp. 508, 519 (S.D.N.Y. 1996), aff'd 107 F.3d 3 (2d Cir. 1997) (quoting Guardian Loan Co. v. Early, 47 N.Y.2d 515, 520-521 (1979)).  However, "this power should be exercised sparingly and with great caution."  Id. (quoting Guardian, 47 N.Y.2d at 520). A court may also vacate a sale to "relieve against mere mistakes, accidents or hardships, or oppressive or unfair conduct of others, though such conduct may not amount to a violation of law; and where fraud is alleged they may order a re-sale upon facts casting such a degree of suspicion upon the fairness of the sale as to render it, in their judgment, expedient, under all the circumstances, to vacate it, though the alleged fraud may not be clearly established."  Id. (quoting Fisher v. Hersey, 78 N.Y. 387, 388 (1879)).  However, this equitable relief must be sought in the court "'by whom the sale [was] conducted.'"  Id. (quoting Goldberg v. Feltman's of Coney Island, Inc., 130 N.Y.S.2d 723, 730 (Sup. Ct. 1954)).

The Debtor argues that the fact that Mr. Goldstein, the Purchaser's current counsel, was the referee who conducted the foreclosure sale, constitutes a conflict of interest sufficient to nullify the sale. (Tr. 11/3/09 at 3-4; Debtor's Opp'n, docket entry # 24, ¶1). The Debtor further argues that Mr. Goldstein and the Purchaser "have been in collusion since March 6, 2006."[5] (Debtor's Opp'n, docket entry # 24, ¶ 2.) Mr. Goldstein contends that he did not represent the Purchaser in the foreclosure proceeding, and only served at the foreclosure sale in the capacity of the referee. (Tr. 11/3/09 at 15.) He asserts that he was retained by the Purchaser in September 2008, approximately two months after the closing of the sale, for the purpose of commencing an eviction proceeding against the Debtor. (Tr. 11/3/09 at 15; Goldstein Affidavit, docket entry # 31, ¶ 4.) Mr. Goldstein argues that while he may have been a referee in another action involving the Purchaser's agent, such a fact does not support a finding of collusion.

In support of her allegation of collusion, the Debtor attaches a Referee's Deed dated March 6, 2006, whereby Mr. Goldstein, in his capacity as referee, transferred a foreclosed property to Mr. Chowdhury. (Debtor's Opp'n, docket entry # 24, Ex. E.) Nothing contained in this exhibit establishes, or even suggests, that the Purchaser and Mr. Goldstein colluded to obtain the Property. There are no allegations that the Purchaser or Mr. Goldstein had any role in the procurement of the Foreclosure Judgment, which was the basis for the sale. The only conclusion the Court can draw from this exhibit is that Mr. Chowdhury was the purchaser of a property sold at foreclosure, and that Mr. Goldstein had been the referee in that foreclosure sale. Therefore, the

---

[5] It appears that this argument is being asserted for the purpose of questioning the validity of the sale, and not the validity of the Foreclosure Judgment, because the Debtor does not allege that Mr. Goldstein and Mr. Chowdhury were involved with respect to the property prior to the Foreclosure Judgment.

Debtor has not substantiated her allegations that Mr. Goldstein and the Purchaser colluded to deprive her of the Property.

Additionally, this Court must reject the Debtor's argument that a conflict of interest exists sufficient to void the sale. The Debtor has not submitted any evidence that Mr. Goldstein represented the Purchaser at any point prior to the commencement of the eviction proceedings, nor has she provided any authority for the proposition that a sale is subject to vacatur if a referee is later retained as counsel by the successful purchaser.

The Debtor further argues that the Purchaser and Mr. Goldstein have "unclean hands," because, during the eviction proceeding, they contacted Adult Protective Services ("APS") "to have [her] put away," so the Purchaser could obtain the Property. (Tr. 11/3/09 at 8. ) Mr. Goldstein argues that he was required to inform the city marshal of the fact that the Debtor, who is 80 years old (Tr. 11/24/09 at 11), is the subject of an eviction proceeding, and that the city marshal contacted APS because a senior citizen may not be evicted unless APS is contacted. (Tr. 11/3/09 at 17-18.)

The Court rejects the Debtor's argument that contacting APS is a basis to deny the Purchaser's motion. The Debtor has not provided any authority to support a conclusion that the involvement of APS was improper or that it warrants denial of the Purchaser's motion.

Even if the Debtor could support all of these allegations with respect to the foreclosure sale, vacatur of the sale must be sought in the state court. See Levitin, 932 F. Supp. at 519 (dismissing plaintiff's claim relating to the propriety of the sale with leave to replead them in state court). Even if this Court has the ability to vacate the foreclosure sale, the Debtor has not substantiated any of her allegations of collusion, fraud, or improper conduct warranting vacatur

of the sale.[6]  See Citicorp Mortgage v. Strong, 642 N.Y.S.2d 423, 426 (App. Div. 1996) (The

court upheld a foreclosure sale because it "was properly advertised, there [was] no evidence of

any irregularity that would have inhibited the attendance of prospective bidders and the sale price

was not so unconsciously low as to warrant vacatur of the sale," and because "although defendant

suggests that the Referee improperly acted as plaintiff's delegate for bidding purposes at the

foreclosure sale" the record and facts in the case did "not support a finding of fraud or

misconduct which would warrant this Court's interference with the sale on equitable grounds.").

Section 362(d)(2) of the Bankruptcy Code requires that the automatic stay be terminated

with respect to an act against property when the debtor does not have an interest in the property

and the property is not necessary to an effective reorganization.  11 U.S.C. § 362(d)(2).  Here, the

Debtor lacks any interest in the Property, and the Property is not available for her to use in

connection with her chapter 13 case because all of her rights as an owner with respect to the

Property were cut off by the foreclosure sale and subsequent transfer of the Referee's Deed prior

to the commencement of this bankruptcy case.  The automatic stay must therefore be terminated

pursuant to § 362(d)(2) to permit the Purchaser to exercise its rights with respect to the Property.

In re Mizuno, 288 B.R. 45, 49-50 (Bankr. E.D.N.Y. 2002); In re Haynes, 283 B.R. 147, 156

(Bankr. S.D.N.Y. 2002) ("[A] possessory interest alone is 'so tenuous as to represent merely a

scintilla of an interest insufficient to warrant the continued protection of the automatic stay.'"

(quoting In re Liggett, 118 B.R. 213, 218 (Bankr. S.D.N.Y. 1990))).

---

[6] It should be noted that the Referee's Report of Sale states that Property was sold to the Purchaser for an amount greater than the Foreclosure Judgment, and that the Debtor received a surplus of over $50,000.  (Purchaser's Affirmation in Supp., docket entry # 23, at Ex. A.)

The Purchaser has also requested prospective relief from the automatic stay in any future bankruptcy case filed by the Debtor, or alternatively, in any bankruptcy case of the Debtor filed within 180 days. In this case, it is appropriate to grant prospective relief from the automatic stay pursuant to § 105.

Section 105 authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Courts have relied on this section for authority to grant prospective relief from the automatic stay when the debtor is a "serial filer" who abuses the bankruptcy process to obtain the benefit of the automatic stay without any intention of completing the process. See, e.g., Daniels v. J.P. Morgan Chase Bank, No. Civ. A. 4:05CV135, 2006 WL 897211, at *2 (E.D. Va. Apr. 5, 2006); In re Greenslade, No. 05 B 23404, 2005 WL 3789134, at *1 (Bankr. S.D.N.Y. Oct. 5, 2005); In re Feldman, 309 B.R. 422, 426-427 (Bankr. E.D.N.Y. 2004); In re Plymouth, 223 B.R. 910, 912 n.1 (Bankr. E.D. Va. 1998). See also In re Mangano, 253 B.R. 339, 345 (Bankr. D. N.J. 2000). This relief does not bar the debtor from filing a bankruptcy petition in the future, or from seeking to reimpose the stay. Feldman, 309 B.R. at 426. Nor does it prevent the Debtor from seeking a stay of the eviction in state court.

Although the Second Circuit has not decided whether prospective relief from the automatic stay is permissible, it has held that bankruptcy courts may prohibit debtors from filing petitions for periods of time in excess of 180 days. In re Casse, 198 F.3d 327, 339 (2d Cir. 1999). The remedy sought here, prospective relief from the automatic stay, is more narrowly focused and less burdensome to the debtor than the type of refiling bar which the Court of Appeals found permissible in Casse. See Feldman, 309 B.R. at 426 n.5 ("Although the [Casse]

holding is different from that here, the effect of barring a debtor from successive filings to prevent foreclosure is the same.").

In this case, while the Debtor is not a "serial filer," it is clear that she has actively sought, both in this Court and in state court, to thwart the Purchaser's efforts to obtain possession of the Property for over a year.  As discussed above, the Purchaser has owned the Property for over 16 months, and the Debtor's interest in the Property is merely possessory and insufficient to warrant the protection of the automatic stay in this or any future bankruptcy filing.  Furthermore, although a chapter 13 plan was filed in this case, the Trustee filed a motion requesting the dismissal of this case, which must be granted, as discussed below.  Prospective relief from the automatic stay is warranted under these circumstances.

II.  <u>Trustee's Motion</u>

The Trustee seeks dismissal of this case pursuant to § 1307(c).  First, the Trustee asserts the Debtor has not appeared at the initial § 341 meeting of creditors.  Second, the Trustee also contends that the Debtor has not submitted any monthly preconfirmation payments, or provided him with copies of the previous year's state and federal tax returns, copies of all filings required under § 521, and all mandatory disclosures required by E.D.N.Y. LBR 2003-1.

Section 1307(c) provides, in pertinent part:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including– (1) unreasonable delay by the debtor that is prejudicial to creditors; . . . [and] (4) failure to commence making timely payments under section 1326 of this title.

11 U.S.C. § 1307(c)(1),(4).

The Debtor has not provided any justification for failing to appear at the § 341 meeting, for failing to provide the Trustee with required documents, or for failing to make preconfirmation plan payments pursuant to § 1326. The Debtor argues that she did not understand the obligations imposed on her by the Bankruptcy Code. As a debtor seeking protection under the Bankruptcy Code, she has the responsibility to inform herself of her duties. Moreover, resources are available to pro se debtors in this Court to assist them in obtaining counsel and to help them to understand their obligations. Indeed, the docket reflects that the Debtor visited the pro se office more than ten times between the commencement of this case and the hearing on the Trustee's motion.

Therefore, because the Debtor has not complied with a number of her obligations imposed by the Bankruptcy Code, relief under § 1307(c) is appropriate. As explained by the Honorable Jerome Feller:

> Although the law grants a generous measure of relief to debtors, this benefit is not gratuitous. The law also imposes a measure of responsibility. Persons who invoke the protection of the bankruptcy laws should be especially aware of this requisite.

In re Tornheim, 239 B.R. 677, 687 (Bankr. E.D.N.Y. 1999).

Although Tornheim involved a debtor who filed for bankruptcy protection in bad faith warranting dismissal of the chapter 13 case with prejudice, see id., the Trustee has not sought prejudicial relief here and this Court declines to consider the matter sua sponte. However, the basis for relief under § 1307(c) is the same: the Debtor has not complied with her obligations and has not made any genuine effort to reorganize.

Conclusion

For all of the foregoing reasons, the automatic stay is terminated, and this case is dismissed.  Furthermore, the automatic stay is terminated prospectively so that any future bankruptcy filing by the Debtor within 180 days from the date of the order dismissing this case shall not act as a stay with respect to the Purchaser's actions to obtain possession of the Property. A separate order will issue.



**Dated: Brooklyn, New York**
**January 12, 2010**

_____
**Carla E. Craig**
**United States Bankruptcy Judge**